UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

WISSAM GHOLAM,

        Petitioner,

        v.                                  Case No. 16-C-0143

UNITED STATES OF AMERICA,

        Respondent.

---

### ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS AND DISMISSING CASE

On August 17, 1999, Wissam Gholam was indicted in the Eastern District of Wisconsin on one count of producing/trafficking conspiracy, party to a crime, contrary to 18 U.S.C. § 1029(a)(2) and (2). (Doc. 1 at 5; *United States v. Gholam,* Case No. 99-CR-164.) After pleading guilty, this court sentenced Gholam to a term of three-years probation with six-months home detention and restitution in the amount of $164,829.25, joint and several with three co-actors (George Zeidan, Selim Yacoub, and Ghassan Zeidan). (Doc. 1 at 7, 10.) Gholam did not file a direct appeal or otherwise challenge the judgment of conviction. On or about June 19, 2003, he was released from probation. By February 10, 2016, Gholam had paid $30,975 in restitution and collection was turned over to the United States Attorney's Office's Financial Litigation Unit. (Doc. 1 at 8, 9, 11.) On June 24, 2003, he received a notice stating that his restitution balance was $31,022.90. (Doc. 1 at 9.) A second notice on August 11, 2015, stated that the restitution balance was $134,904.25. (Doc. 1 at 10.)

On February 10, 2016, Gholam filed a petition for writ of coram nobis pursuant to 28 U.S.C. § 1651, asking the court to vacate and set aside his conviction based on ineffective assistance of counsel. (Doc. 1 at 1.) This court entered a briefing schedule and briefing was completed on May 26, 2016. On June 8, 2016, petitioner's counsel informed this court that Gholam's green card status would be up for review in February of 2017. Then, on August 15, 2016, five agents from Immigration Customs Enforcement appeared unannounced at Gholam's home and arrested him. Since that date, Gholam has been detained at the Bergen County Jail in New York. (Doc. 9.)

The court conducted a status conference on August 30, 2016, and invited the petitioner to file evidence supporting his claim. Gholam then filed the declaration of David S. Glassman, and the court heard the testimony of Gholam's wife during a September 27, 2016, hearing. No other evidence was proffered or witnesses called.

The writ of coram nobis falls within the scope of the All Writs Act, 28 U.S.C. § 1651, authorizing federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *United States v. Bush*, 888 F.2d 1145, 1146 (7th Cir.1989) (citing *United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247, 98 L. Ed. 248 (1954)). However, because "frequent use of this writ would discard the benefits of finality," "it has been reserved for compelling events." *United States v. Keane*, 852 F.2d 199, 202 (7th Cir.1988), *cert. denied*, 490 U.S. 1084, 109 S. Ct. 2109, 104 L. Ed.2d 670 (1989). Indeed, the Supreme Court wrote that it would be "difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429, 116 S. Ct. 1460, 134 L. Ed.2d 613 (1996). The Seventh Circuit Court of Appeals has explained that

"to the extent that the writ of coram nobis retains vitality in criminal proceedings," such relief is limited to (1) errors "of the most fundamental character" that render the proceeding invalid, (2) situations where there are sound reasons for the failure to seek earlier relief, and (3) instances when the defendant continues to suffer from his conviction even though he is out of custody. *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007).

Here, Gholam asserts that he was unsophisticated in the criminal justice system at the time of the conviction and did not understand the plea agreement fully. He believes his attorney should have pursued other options aggressively including a non-prosecution agreement or deferred prosecution. Specifically, Gholam submits that counsel failed to adequately explain the plea, the defenses, the potential consequences that an aggravated felony conviction would have on his immigration and resident alien status, and the doctrine of joint and several liability. According to Gholam, counsel failed to advise "that he could be deported or he could be denied re-entry if he left the United States for any reason, that he may not be able to maintain residence status, and could not pursue United States citizenship." (Doc. 1 at 22.) His explanation for not raising these arguments earlier is that he had no reason to investigate his situation until he received the notification in August of 2015 that he still owed $134,904.25 in restitution. (Doc. 6 at 13.)

As an initial matter, Gholam's arguments regarding whether counsel advised him of the risk of deportation is foreclosed by Supreme Court precedent. In *Padilla v. Kentucky*, the Supreme Court held "that counsel must inform her client whether his plea carries a risk of deportation," and that failure to do so constitutes ineffective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284 (2010). However, after deciding *Padilla*, the Supreme Court ruled in *Chaidez v. United*

3

*States* that "a defendant[] whose conviction[] became final prior to *Padilla* . . . cannot benefit from its holding." *Chaidez v. United States*, 133 S. Ct. 1103, 1113, 185 L. Ed. 149 (2013). Because Gholam pled guilty in December of 1999 and this argument is being raised on collateral review, he cannot benefit from the holding in *Padilla*.

Nevertheless, Gholam argues that the *Chaidez* decision created a watershed rule of criminal procedure, fitting under one of the two exceptions stated in *Teague* which would allow for the rule to be applied retroactively. Gholam points to footnote three of the *Chaidez* decision to support his argument, which states:

> *Teague* stated two exceptions: "[W]atershed rules of criminal procedure" and rules placing "conduct beyond the power of the [government] to proscribe" apply on collateral review, even if novel. 489 U.S., at 311, 109 S. Ct. 1060 (internal quotation marks omitted). Chaidez does not argue that either of those exceptions is relevant here.

*Chaidez*, 133 S. Ct. at 1107, n.3 (quoting *Teague v. Lane*, 489 U.S. 288, 311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion). However, Gholam has failed to cite any precedent that would treat *Padilla* as a watershed rule of criminal procedure.

Additionally, Gholam's arguments are undermined by the court's recollection of the events surrounding the plea hearing and the records available to this court. At the time of his plea, Gholam was just months away from graduating cum laude from The City University of New Work with a Bachelor of Business Administration. His 3.45 cumulative grade point placed him in the upper 15 to 18 percent of his class. Gholam worked for Carnegie Investor Services, Inc., starting in 1998, and, at the time of sentencing, had been promoted to Operations Manager of the firm. (Case No. 99-CR-164, Sent'g Mem. Ex. C.) Gholam retained counsel from New York who negotiated the plea, and a former assistant United States Attorney from New York to assist at sentencing. Moreover, a third attorney,

4

David S. Glassman, filed a letter with this court prior to sentencing indicating that he had thirty years of experience and was a specialist in Immigration and Naturalization law. Attorney Glassman maintained an attorney client relationship with Gholam, working with Gholam to "get him permanent residence in the United States." Attorney Glassman wrote that he was certain "that if Wissam has the opportunity to continue to reside in the United States, he will be a credit to our country . . . ." (Case No. 99-CR-164, Sent'g Mem. Ex. C.)

In preparing for sentencing, Gholam informed the United States Probation Office that he pled guilty because he was guilty of aiding and abetting the use of unauthorized credit card account numbers along with the other participants, and felt terrible about his involvement. (Case No. 99-CR-164, Sent'g Mem., Ex. E at 5.) Moreover, the presentence writer noted at paragraph 50 of the presentence report that Gholam's residence status was verified by the Immigration and Naturalization Service and INS stated that a conviction for the instant offense would make him eligible for removal. (Case No. 99-CR-164, Sent'g Mem., Ex. E at 9.) Gholam told this court that he had the opportunity to review the presentence report and discuss the same with defense counsel. (Doc. 1-3 at 2.)

The sentencing memorandum filed by Attorney Gregory J. O'Connell, argued that the court should grant a downward departure under the United States Sentencing Guidelines because he faced the "harsh penalty of deportation and should Mr. Gholam be sentenced to any term of incarceration, an INS detainer will be lodged against him and he will remain in INS custody until his immigration proceedings are concluded." (Case No. 99-CR-164, Doc. 18, Sent'g Mem. at 11.) The sentencing transcript reveals that Attorney O'Connell vigorously argued on behalf of Gholam for a more lenient sentence based on the risk of deportation:

5

> It's one of the most difficult things I think that confronts the nation right now is how immigrants are treated and how harsh the laws are in terms of what qualifies for deportation in terms of transgressions of law. With the good aim of attacking terrorism in the country and the Antiterrorism Act several years ago, the bases for deportation was greatly expanded, and perhaps I believe many would suggest too far to include even misdemeanors if a certain amount of money, up to a thousand dollars, were involved.
>
> A misdemeanor can be a basis for deportation. A misdemeanor can be interpreted as an aggravated felony under the immigration laws under Title 8, and the situation that Mr. Gholam faces now is that he's pled to a felony. He's pled to a felony which involved a conspiracy that ran up in excess of $200,000 in charges. *And there is a strong likelihood that he will not prevail in a deportation proceeding. He understands that*.

(Doc. 1-3 at 7)(emphasis added). He further argued:

> He understands that because of the dramatic consequences that are flowing from this, this mistake, which include, as we stand before the Court now, not just the potential for being incarcerated and losing his job and perhaps, perhaps his relationship with the woman who he's very close to now, but beyond that losing his opportunity to remain in this country.

(Doc. 1, Ex. 3 at 6.)

During sentencing, the assistant United States Attorney indicated that his office did not know what would happen with respect to "Gholam's deportation situation." Two of the three co-actors had already been deported. (Doc. 1-3 at 24.) Gholam's allocution, acknowledged his mistake and asked that he be allowed to stay in this country. (Doc. 1-3 at 26-27.)

The court imposed restitution in the amount of $163,829.25 to be made to the American Express Company, and that obligation was made joint and several. (Doc. 1-3 at 28.) Additionally, the court required that Gholam cooperate with Immigration and Naturalization and advised Gholam of his appeal rights to the extent that Gholam believed there may be "fundamental defects in this proceeding which have not been waived." (Doc.

1-3 at 29.) In the end, Gholam benefitted from his arguments and received a lenient sentence.

The court provided Gholam with several opportunities to file evidence in support of his petition and/or call witnesses on his behalf. To date, the court has nothing more than the allegations in the petition and an affidavit from Attorney Glassman, who filed the letter on Gholam's behalf during the criminal sentencing. Attorney Glassman states that he never rendered legal advice regarding the criminal behavior or the immigration consequences of that behavior and has never been involved in representing criminal aliens. Attorney Glassman was not one of the Gholam's defense attorneys during the criminal proceedings.

The testimony of Gholam's wife, Silke Kueck, has also been considered. Kueck testified that she met Gholam in 1999 and remembers speaking to him about his criminal case because he was preparing his defense. She testified that Gholam relied on his immigration attorney at the time who processed his green card papers, Attorney Glassman, and his criminal defense attorney. Kueck believes that Gholam wasn't fully aware that his agreement would preclude him from maintaining residence in the United States. She added that she did not participate in discussions with her husband and his attorneys regarding the underlying criminal case until 2007 when issues arose because of the immigration case. Kueck had no discussions with her husband regarding his defense while the criminal case was pending in Wisconsin. Kueck confirmed that Gholam has been able to send her correspondence since his detention. Further, Gholam does not assert in the pending petition that he is innocent of the charges underlying his conviction.

Petitioner's counsel has zealously pursued this motion on behalf of his client and has appealed to this court that justice be done. Essentially he has asked for a "do-over" because of the "draconian consequences of that plea." Acknowledging the conversations about the immigration consequences in the sentencing transcript, petitioner's counsel suggests that there was "some level of equivocation." While this court appreciates the testimony and arguments that have been presented here, it is not persuaded that it has the authority or a legal means to grant the pending petition. Gholam's criminal case was not an invalid proceeding. Deportation was discussed prior to and during sentencing. In addition, the assistant United States Attorney handling the instant matter represents to the court based on his involvement in the criminal case, that deportation was "part of the mix" in negotiating a plea and the government recommending a sentence of probation.

Because Gholam has not established an error of the most fundamental character, *Chaidez* holds that *Padilla* was not retroactive, and the court finds no sound reason for Gholam's failure to seek earlier relief, the court cannot grant the pending petition. To the extent that immigration proceedings continue, Gholam may seek appellate review. Now, therefore,

IT IS ORDERED that the petition for writ of coram nobis (Doc. 1) is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 17th day of November, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE